UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA,     )
                              )
          Plaintiff,          )
                              )
     v.                       )   CIVIL ACTION
                              )   NO. 09-11623-WGY
THE COMMONWEALTH OF           )
MASSACHUSETTS,                )
                              )
MASSACHUSETTS DEPARTMENT      )
OF CORRECTIONS                )
                              )
          Defendants.         )
                              )
```

MEMORANDUM AND ORDER

YOUNG, D.J.                                          June 18, 2012

**I.   INTRODUCTION**

The plaintiff, the United States of America ("United States"), commenced this action on September 28, 2009, against the Commonwealth of Massachusetts and the Massachusetts Department of Corrections (collectively the "Commonwealth") seeking an order enjoining the Commonwealth from administering the Caritas Physical Abilities Test ("Caritas PAT") in the selection of entry-level correctional officers ("COs") and correctional program officers ("CPOs") due to its alleged disparate impact on women in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.  On February 10, 2012,

1

the parties jointly notified the Court that they had agreed upon a settlement of this case. Now they ask the Court to approve the proposed settlement agreement despite an objection from an interested party.

**A.   Procedural Posture**

The United States filed a complaint against the Commonwealth on September 28, 2009. Compl., ECF No. 1. The Commonwealth denied the allegations. Answer, ECF No. 9. After a lengthy and dynamic pretrial process, see United States v. Massachusetts, 781 F. Supp. 2d 1, 4-8 (D. Mass. 2011), and this Court's holding that in selecting COs and CPOs the Commonwealth unintentionally imposed a disparate impact on women, see id. at 10, on February 10, 2012, the parties filed a joined motion provisional to approve the settlement agreement reached herein. Joint Mot. Provisionally Approve Settlement Agreement Schedule Fairness Hr'g ("Joint Mot. Provisionally Approve"), ECF No. 144. On February 14, 2012, the Court entered an order provisionally approving the settlement agreement and scheduling a fairness hearing for May 15, 2012. Provisional Approval Settlement Agreement, ECF No. 147. Chief Magistrate Judge Sorokin was appointed to preside over further mediation as set forth in the settlement agreement. Elec. Notice, Feb. 21, 2012.

Prior to the fairness hearing, pursuant to paragraphs 27 and 28 of the proposed settlement agreement, the parties notified all

individuals and organizations whose interests might be affected by the agreement and sent them instructions for filing objections. Joint Mem. Law Supp. Final Approval Settlement Agreement Resp. Objection ("Joint Mem. Approval") 1 & n.2, ECF No. 151. The collective bargaining representative of correctional officers employed by the Massachusetts Department of Corrections, the Massachusetts Correction Officers Federated Union ("MCOFU"), has objected. Joint Mem. Approval, Ex. 2, Mem. Law Supp. Interested Party MCOFU's Objection Final Approval Settlement Agreement ("MCOFU Objection"), ECF No. 151-2.

Before the fairness hearing, on May 4, 2012, in response to the objection, the United States and the Commonwealth submitted a joint memorandum asking the Court to approve the settlement agreement despite the objection. See Joint Mem. Approval. The Court held a fairness hearing on the proposed settlement agreement on May 15, 2012, and took the matter under advisement.

**B.  Facts**[1]

Since June 2007, the Commonwealth has used the Caritas PAT to pre-screen and select applicants for CO and CPO positions. United States v. Massachusetts, 781 F. Supp. 2d at 9. While there are several criteria that an applicant must meet, all must pass the Caritas PAT to be offered a position as a correction

---

[1] The facts are drawn from this Court's opinion in United States v. Massachusetts, 781 F. Supp. 2d at 9.

officer.  Id.

The Caritas PAT is made up of 11 events that applicants must complete either within a given time frame or in conformance with some other criteria.  Id.  The Caritas PAT has the same physical requirements for both men and women.  Id.  In 2007, 97.2 percent of men passed, while 55.1 percent of women passed.  Id.  In 2008, 96.0 percent of men passed, while 65.2 percent of women passed.  Id.  In 2009, 99.0 percent of men passed, while 84.2 percent of women passed.  Id.

**C.    The Proposed Settlement Agreement**

Under the terms of the proposed settlement agreement the Commonwealth agrees to stop utilizing the Caritas PAT as part of its hiring process.  Joint Mot. Provisionally Approve, Ex. A, Settlement Agreement ¶ 31, ECF Nos. 144-2 - 144-3.  Instead, a new test will be developed by a contractor selected by the Commonwealth.  Id. ¶ 33.  The United States will participate in the design, development, and validation of the new test.  Id.

Further, the settlement agreement provides both monetary (backpay) and hiring relief to female candidates who previously failed the Caritas PAT.  Id. ¶¶ 50-67.  In particular, the settlement agreement provides for priority hiring ("priority hire relief") with retroactive seniority for thirty female candidates who previously failed the Caritas PAT.  Id. ¶ 57.  To be qualified for an offer of priority hire, an interested applicant

4

must successfully complete the new physical test and all other pre-offer selection procedures then in effect.  Id. ¶ 59.  The thirty priority hires will receive seniority retroactive to the date each candidate would have been hired were it not for the failed test.  Id. ¶ 61(b).  Pursuant to the proposed settlement, the Commonwealth will also provide "delay hire relief" with retroactive seniority to female candidates who initially failed the Caritas PAT, but later passed the test and were hired by the Massachusetts Department of Corrections.  Id. ¶¶ 8, 67.

Retroactive seniority is defined as civil service seniority calculated pursuant to Massachusetts General Laws, Part I, Title IV, Chapter 31, Section 33.  Id. ¶ 21.  Retroactive seniority shall be calculated based on each applicant's presumptive hire date and includes, but is not limited to, eligibility for salary or other pay, retirement benefits, protection from layoff/reduction in workforce, recall/reemployment procedures, and eligibility for retirement.  Id.

Finally, the Commonwealth will pay $736,000 to the female applicants who previously failed the Caritas PAT.  Id. ¶ 50.

**D. MCOFU's Objections to the Settlement Agreement**

In its written objection to the proposed settlement agreement, MCOFU argues that the settlement agreement interferes with numerous terms of MCOFU's collective bargaining agreement with the Commonwealth (effective July 1, 2009 - June 30, 2013)

5

("collective bargaining agreement"), like retroactive seniority provisions, correction officer hiring procedures, and reassignments. MCOFU Objection 4-8. Also, MCOFU contends that the proposed settlement provides for priority hire and delay hire relief with retroactive seniority that is inappropriate because it unduly burdens incumbent correction officers, and awards female applicants unearned benefits. Id. at 8. Finally, MCOFU argues that the proposed settlement fails to provide for MCOFU's involvement in development of the new entry-level physical test. Id. at 8-9. At the fairness hearing, however, MCOFU waived its arguments related to civil service seniority date and the institutional seniority date. Tr. Fairness Hr'g at 9:2-7, ECF No. 154.

Accordingly, during the oral arguments, the parties focused on the two remaining issues: whether MCOFU should be involved in the development of the new test and whether competitive status seniority is an appropriate relief. E.g., id. at 5:8-9 (noting that "there are really two ways [the Court] could improve the settlement agreement"). First, MCOFU argues that the benefit seniority as defined in paragraph 21 of the settlement agreement also includes competitive status entitlements. Id. at 5:10-6:11. MCOFU contends that the competitive seniority entitlements contained in the proposed settlement agreement are inappropriate form of relief under Title VII. See MCOFU Objection 8. Second,

6

Article 30 of MCOFU's collective bargaining agreement states that MCOFU has the duty of cooperation and support in developing a new physical abilities test whereas the proposed settlement agreement does not provide for the involvement of MCOFU in the development of the new test.  Id. at 6:12-7:5; MCOFU Objection 8-10.

**II.   ANALYSIS**

   **A.   Legal Standard**

Before approving a proposed settlement agreement, the Court must examine the settlement to determine whether it is fair, reasonable, and adequate; and not illegal, a product of collusion, or against the public interest. See Voss v. Rolland, 592 F.3d 242, 251 (1st Cir. 2010) (approving class action settlement because it was fair, reasonable, and adequate); City of Bangor v. Citizens Commc'n's Co., 532 F.3d 70, 93 n.10 (1st Cir. 2008) (evaluating fairness, adequacy, and reasonableness of private settlements); Bragg v. Robertson, 54 F. Supp. 2d 653, 670 (S.D.W.Va. 1999) (approving private settlement after finding settlement to be "fair, adequate, reasonable, and faithful to the environmental statutes").

Moreover, although the district court must carefully scrutinize the settlement, there is a presumption in favor of the settlement "[i]f the parties negotiated at arm's length and conducted sufficient discovery." In re Pharmaceutical Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir.

2009) (approving class action settlement); see also Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 72 (D. Mass. 1999) (Gorton, J.) ("Th[e] fairness determination is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation."). In sum, the standard of review applicable to the approval of the consent decree is a narrow one.[2]

### B. The Fairness, Reasonableness and Adequacy of the Proposed Settlement Agreement

The presumption that the settlement is reasonable "[i]f the parties negotiated at arm's length and conducted sufficient discovery", In re Pharmaceutical, 588 F.3d at 32-33, applies here. To begin, almost three years elapsed after the filing of the original complaint. The settlement agreement was reached after the United States received substantial discovery and the case was ready to go to trial. Further, the settlement resulted from arm's length negotiations. Settlement Agreement ¶ 109. With the presumption that the proposed settlement agreement is

---

[2] Underlying this standard is the general policy favoring and "encouraging voluntary settlement of employment discrimination claims." Equal Emp't Opportunity Comm'n v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) (citing Carson v. American Brands, Inc., 450 U.S. 79, 88 n.14 (1981) ("In enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims.")).

8

fair, reasonable and adequate in mind, the Court addresses the two issues presented and argued by MCOFU.

### 1. MCOFU's Involvement in New Test Development

First, MCOFU contends that the proposed settlement agreement explicitly disregards the terms (in particular Article 30) of the previously negotiated collective bargaining agreement because it does not consider the members of MCOFU in either the development and implementation of a new physical test to be administered as part of the hiring process, or physical standards that must be met as a condition of continued employment. MCOFU Objection 9. Rather, the settlement agreement provides that "the Commonwealth and the [Massachusetts Department of Corrections], through their contractor, shall design, develop and validate [the new test]." Settlement Agreement ¶ 33.

Article 30, Section 2 of the collective bargaining agreement states that "[t]he Union shall provide its full support and cooperation to the Human Resources Division (HRD) and/or HRD's designee in the development of initial medical and physical fitness standards. . . . Said support and cooperation shall include assisting HRD in the identification of employees to serve as subject matter experts . . . ." Joint Mem. Approval, Ex. 2, Collective Bargaining Agreement, ECF Nos. 151-2 - 151-5. During the fairness hearing, the Commonwealth explained that "the reason that [MCOFU] wasn't specifically incorporated into the terms of

9

the settlement agreement is for the purpose of the settlement agreement all [the parties] wanted to do was outline the process by which the parties to the litigation would engage in working with each other to proceed on the test development and test validation." Tr. Fairness Hr'g at 10:1-7. Also, the counsel for the Commonwealth confirmed that "there will be inclusion" of MCOFU in developing the new test. Id. at 10:21.

Considering MCOFU's duty and at the same time expectation to provide its full support and cooperation in designing and developing the new test, and the understanding among the parties to the settlement agreement that imposing the condition to comply with Article 30 would not "present a problem," id. at 10:19-20, the Court conditions the settlement agreement on the parties' prospective compliance with Article 30 of the MCOFU's collective bargaining agreement.

### 2. Retroactive Competitive Status Seniority

Second, MCOFU argues that the settlement agreement provides undeserved retroactive benefit seniority to the priority hires and delay hires, and shifts the burden to current MCOFU members and future job applicants. MCOFU Objection 8. In particular, MCOFU argues that the relevant elements - layoffs/ reductions in workforce, recall or reappointment procedures, and eligibility for retirement - are elements of competitive status seniority and

not of benefit status seniority as they appear in the Section 21 of the settlement agreement. Tr. Fairness Hr'g at 5:14-20. The Commonwealth and the United States argue that competitive status seniority presents appropriate relief under Title VII. Joint Mem. Approval 6-7.

Is every one of the three elements mentioned by MCOFU a part of the competitive status seniority as MCOFU claims? "Seniority principles are increasingly used to allocate entitlements to scarce benefits among competing employees ('competitive status' seniority) and to compute noncompetitive benefits earned under the contract of employment ('benefit' seniority)." Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 766 (1976) (citation omitted). The parties to the settlement agreement agree that layoffs and recall do affect competitive status seniority, thus there is no dispute as to these two. Tr. Fairness Hr'g at 12:4-5. The parties, however, dispute whether eligibility for retirement is an element of benefit seniority or an element of competitive status seniority. Id. at 5:14-20, 12:7-8. The Supreme Court in Franks listed the elements of the competitive status seniority.[3] Franks, 424 U.S. at 766-67. Eligibility for

---

[3] The Supreme Court stated:

Included among the benefits, options, and safeguards affected by competitive status seniority, are not only promotion and layoff, but also transfer, demotion, rest days, shift assignments, prerogative in scheduling

11

retirement does not appear in the list.  Also, as counsel for the United States and the counsel for the Commonwealth of Massachusetts correctly argued, there is "no limit on how many employees can receive the pension benefits."  Tr. Fairness Hr'g at 12:7-11; 14:13-20.  Accordingly, the eligibility for retirement is not an entitlement among competing employees, it is rather a noncompetitive benefit earned under the contract.  See Franks, 424 U.S. at 766.  As a result, the only two elements of competitive status seniority provided for in the settlement agreement are layoffs/ reduction in force, and recall or reappointment.

Turning to the second issue - whether competitive status seniority is an appropriate relief in this case - there is "no argument that the award of retroactive seniority to the victims of hiring discrimination in any way deprives other employees of

---

vacation, order of layoff, possibilities of lateral transfer to avoid layoff, "bumping" possibilities in the face of layoff, order of recall, training opportunities, working conditions, length of layoff endured without reducing seniority, length of layoff recall rights will withstand, overtime opportunities, parking privileges, and, in one plant, a preferred place in the punch-out line.

Franks, 424 U.S. at 766-67 (quoting Donald R. Stacy, Title VII Seniority Remedies in a Time of Economic Downturn, 28 Vand. L. Rev. 487, 490 (1975)).

indefeasibly vested rights conferred by the employment contract." Franks, 424 U.S. at 778. Competitive status seniority is appropriate relief for resolution of Title VII employment discrimination cases even though it may have an impact on incumbent employees. Id. at 762-66; see also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 399-400 (1982) (holding that "class-based seniority relief for identifiable victims of illegal hiring discrimination is a form of relief generally appropriate under section 706(g)"). Accordingly, in exercising the power to modify the settlement agreement, the Court ought "take as [its] starting point the presumption in favor of rightful-place seniority relief," unless the objector can show an "unusual adverse impact arising from facts and circumstances that would not be generally found in Title VII cases." Franks, 424 U.S. at 780 n.41.

MCOFU offers one example of an unusual adverse impact - by allowing female applicants to bypass a defined process of seniority, the settlement agreement shifts the burden of compensation to current MCOFU's members and future job applicants. MCOFU Objection 7-8. As the Supreme Court recognized in Franks, retroactive seniority may indeed conflict with the interests of other employees. 424 U.S. at 774-75. Nonetheless, retroactive seniority "may not be denied merely because the interest of other employees may thereby be affected."

13

Id.; see also id. at 777 (holding that "the burden of the past discrimination in hiring is with respect to competitive status benefits divided among discriminatee and nondiscriminatee employees"). Thus, MCOFU's only argument regarding burden shifting to current employees fails. Indeed, an award of the competitive seniority credit a female applicant presumptively would have earned but for the wrongful treatment seem necessary. Cf. United States v. City of New York, 681 F. Supp. 2d 274, 292 (E.D.N.Y. 2010) (holding that award of competitive status seniority "is not a classification based upon race or ethnicity, but is instead a classification based upon the individual's status as a victim of prior discrimination").

Most importantly, as the parties to the settlement argue, the impact of the award of competitive status seniority on present employees is not significant. Joint Mem. Approval 8. Here, the retroactive seniority will be provided to no more than thirty individuals for priority hire relief. Settlement Agreement ¶ 57. Further, the parties to the settlement agreement explain that the retroactive seniority will be provided to only five individuals for delay hire relief. Joint Mem. Approval 8. These thirty five individuals will constitute less than 1 percent of the current correction officer work force. Joint Mem. Approval, Ex. 1, Aff. Karen Hetherson Supp. Parties' Joint Mem. Law Supp. Final Approval Resp. Objection ("Hetherson Aff.") ¶ 15,

ECF No. 151-1. Moreover, retroactive seniority shall not apply for purposes of promotion until an interested applicant completes one year of service. Settlement Agreement ¶ 21.

As a result, the Court decides that MCOFU has failed to demonstrate some unusual adverse impact on incumbent employees that would justify forbidding the competitive status seniority in the proposed settlement.

The proposed settlement agreement includes the three basic components of "make whole" relief in hiring discrimination cases: a job offer, backpay, and retroactive seniority. See Franks, 424 U.S. at 763-64. Here, competitive status seniority constitutes an award of the seniority status that some of the female applicants would individually have enjoyed but for the illegal discrimination. In any event, this Court, acting within the limited role for approving the proposed settlement agreement, concludes that competitive status seniority elements constitute reasonable and appropriate relief under Title VII. As a result, conditioned on compliance with Article 30 of the collective bargaining agreement, the proposed settlement is fair, adequate, reasonable and appropriate under the particular facts of this case.

### III. CONCLUSION

For the foregoing reasons, the Court approves the settlement agreement entered by the United States of America, the

Commonwealth of Massachusetts and the Massachusetts Department of Corrections in this matter, ECF Nos. 144-2 - 144-3, with the condition that the parties to the settlement agreement prospectively comply with Article 30 of MCOFU's collective bargaining agreement.

    **SO ORDERED.**

                                      <u>/s/ William G. Young</u>
                                      WILLIAM G. YOUNG
                                      DISTRICT JUDGE